The next case for oral argument this morning is 25-1962, United States v. Espanola. Good morning, Mr. Drysdale. Good morning, Your Honor. You may please record. My name is Tom Drysdale, and I'm here today on behalf of Luisito Espanola. Federal Rule of Evidence 901B4 permits authentication of evidence based on the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item taken together with all of the circumstances. The very, very narrow question in this case is whether those circumstances in a criminal case can include a defendant's production under Rule 16. Now, there's two quick things I want to address based on the government's response. First, the standard of review. Can we talk about Rule 16? Certainly. And within Rule 16, because I believe it might have been missed, that there was both an evidentiary objection as well as a constitutional objection being made. But so within Rule 16, where was the production required? Can you direct us beyond just kind of Rule 16, but point us to where or why that disclosure was made? Right, Your Honor. So the disclosure was made in this case because if Mr. Espanola wanted to take the witness stand in this case and testify in his own defense in a certain way, meaning in accordance with these WhatsApp messages, Rule 16 required that he turn them over to the government prior to trial. And so that's… That's what I'm asking. Where within Rule 16? It requires the production by the defense, the reciprocal production by the defense of anything that the defense may use in its presentation of evidence at trial. And so if Mr. Espanola was going to take the witness stand in accordance with these messages, he had to produce those messages to the government. And so I think what we really want to emphasize here is this is an issue of statutory interpretation. We're not trying to argue that Rule 16 is invalid or that Rule 901 is invalid entirely. The argument that we present here today is that it interferes with Mr. Espanola's right to testify in the manner that he so chooses if the district court is able to consider his production, his compliance with Rule 16 as part of the authentication question. But Mr. Espanola has produced the WhatsApp texts pursuant to Rule 16 in case he wanted to use them at trial with a statement that said, Espanola is producing these documents pursuant to Rule 16. They are in his possession, but he makes no statement about the authenticity of them. Could that have been something that he could have done? Your Honor, I think he conceivably could have did that. However, what essentially happens here is that the district court looks at this and says, well, they were produced by Mr. Espanola. Therefore, they must be authentic. And there's just a problem with that in a criminal case when at the outset, so to I think drill the problem down to exactly why we think this is problematic, it's essentially making a defendant decide prior to ever hearing the government's evidence against him whether he's going to testify in a certain manner or not. And that's really the core of this problem. The government's response seems to indicate, well, Mr. Espanola could still take the witness stand. He wasn't entirely prevented from doing that by this ruling, and therefore it's not problematic. How do you get around our opinion in Johnson, which seems pretty close to this? And so I think I would push back on Johnson being close because Johnson deals specifically with impeachment evidence, and it deals not only with impeachment evidence but, of course, evidence that the government already had and found on its own. So the difference between this and Johnson is that in Johnson, the defendant can sit there and hear every bit of the government's presentation, and the defendant can then say, okay, I can either take the witness stand now and knowing that that evidence is going to come in or now I can sit here and be silent and that evidence stays out. That's just not this. Once we comply with Rule 16 under the district court's ruling, the evidence comes in. And it comes in whether or not the defendant takes the witness stand at that point because he complied with Rule 16, which is what the rule says. Have you found in Brock and Feldman, the court barred the introduction of certain evidence, which is what led to the error?  But I haven't found any cases where there's been an introduction of evidence. And so I will admit to this court I can't find a perfect case either. I look at the cases. I look at Rock. I look at cross-examining a witness, which I think was Chambers. And is this a perfect match? It isn't. But we think that this is closer to those cases, like Chambers, like Rock, like Crane, which is circumstances around a confession. You can't testify to that. We think this is closer to that than it is to cases like Johnson with impeachment evidence. If a defendant, though, is producing this and representing he might use it in his case, why isn't there at least an implicit acknowledgement that it's authentic? Because otherwise, why would he produce it? Your Honor, the defendant, again, I think at this point he's just protecting his rights. So if the defendant comes forward and the defendant decides to testify, then the defendant is going to have to sit down and, of course, the defendant is going to have to lay some sort of foundation for that evidence. And so for the government to just—and I think this is what's most troubling about this case— for the government to just be able to stand in front of the jury and take what truly ends up being the linchpin of their case and say, it's authentic because we got it from Mr. Espinola. That's a problem for that to only be the foundation, particularly when we look at the alternative, this rule, this construction. But it wasn't that the purpose, going back to Judge St. Eve's question, that the judge posed at the—because there was not a response in the motion in limine— I'm sorry, let me direct you to what I'm talking about. In the motion in limine, the government made clear that the intent was, go ahead and make a ruling on the miscibility of this evidence. We intend to use it in our case in chief. And the focus became, at least at the hearing, that why was this information introduced? Why was it given over under Rule—pursuant to Rule 16? And so if it was given over to the obstacles that this might be used in the defendant's case in chief, going to Judge St. Eve's question, why would that implicit authentication not be— the doctrine kind of not be triggered? And I think that the practical answer to that is, at least in my experience as a trial attorney, when I do trial work, when I do Rule 16 disclosures, I over-disclose. And I do it often, and I do it just basically for that reason. Over-disclose, and then when it comes time to try the case, I'm going to distill things down. I'm going to see what's authentic, what's not, what am I going to introduce. You didn't represent Mr. Espinola below, did you? I did not, Your Honor. My guess is that you probably would not have over-disclosed this. It's possible that I would have made a different decision, but I think that that is really part of the problematic nature of this. And the other thing I want to emphasize is this is admittedly an odd situation. Before we get into your rebuttal time, we might need to transition really quickly as to what is the best argument that the constitutional argument that we're hearing in the briefs, that we see in the briefs, was raised below or preserved? And I think that the best argument is you preserve arguments. You waive claims, not arguments. And so we argued below very clearly that this was not admissible under Rule 901. The argument that we're giving the Court on appeal is that it's not admissible under Rule 901 because it interferes with Mr. Espinola's right to testify in his own defense. So was a constitutional objection raised below? I don't think a specific constitutional objection was raised. There was an argument raised below that it can't come in under the rule, and that's essentially the same argument that we're making here today. We're just arguing that this interpretation of the rule creates a statutory or, pardon, a constitutional problem. So if it was not raised below, the constitutional objection, we stated that that must be raised. Otherwise, it's plain error. And so what I'm hearing from you is that the 901 argument regarding being, allowing this to be admissible had an effect on his constitutional rights, and therefore it's an extension. That's correct. That's absolutely right, Your Honor. Thank you for phrasing that better than I did. And I will reserve the remaining time unless there's more questions. Thank you. Good morning. May it please the Court. Good morning, Your Honor. It's Jeff Kinster on behalf of the United States. It's undisputed on appeal that the circumstances actually before the district court suffice to support a finding that the exhibit in question was what it was claimed to be. The only question the defendant raises on appeal is whether the law prohibited the district court from considering one of those circumstances, the defendant's production of the document. But neither the rules nor the Constitution prohibited the district court from considering that document or that factor, and the defendant could not prevail even if they did. Now, to start at the beginning, the defendant did not preserve this objection, and preservation is governed squarely by Rule 103A of the Rules of Evidence. Under that rule, a defendant to preserve or any party to preserve an argument has to both object and inform the district court of the specific ground for the objection. The rule uses that specific terminology. So this court found in Echols, for example, that a general hearsay objection didn't suffice to preserve the more specific argument the defendant raised on appeal concerning the timing of a prior inconsistent statement. Now, of course, that's part of the hearsay rule as well, but because the defendant didn't put the district court on notice of that nuance, the defendant hadn't preserved the argument that he was raising on appeal. It's much the same here, whereas in the district court, the defendant objected on authenticity grounds, but he did so purely on factual grounds, arguing that the circumstances before the court, including his own production of the document, were simply not sufficed to show that this document was authentic. On appeal, he's making a purely legal argument that the court was required to exclude from its analysis a particular factor. The defendant never put the district court on notice that he was asking for such a thing. If he had, the analysis would have proceeded differently. In fact, in his opening brief on appeal, the defendant faults the district court for not going into more detail on the remaining factors, faults the district court for not addressing the balancing test that applies to the constitutional challenges to the rule. Had the defendant raised the argument in the district court, the court would have had the opportunity to do those things, and because he didn't, he forfeited that claim. So this court reviews only for plain error. You're saying that it's waiver? Forfeiture, Your Honor. Or forfeiture. Sorry. Well, I don't know. In the trial court, Mr. Espinel made the same claim that the government could not use his own Rule 16 disclosures to lay a foundation for the WhatsApp messages to authenticate them under Rule 901. And he makes the same claim on appeal with a slightly different argument. I mean, isn't this just an expansion on the argument around the same claim? I read the transcript in the record differently, Your Honor. I don't read the defendant as saying that the district court could not use or could not consider the factor. He said that it was not sufficient, that without testimony from a participant in the conversation or without testimony from the defendant himself, that it would not suffice under the rule. But on appeal, he's making a very different legal argument, that the district court was simply required to exclude from its analysis entirely this particular factor, and I don't think that was ever filled. But do you think he was going a little bit further, though? In particular, there's a line where he's, during the hearing, where he says, I don't know whether my client's going to be testifying at trial or not at this point. No, he said, I'm sorry. I don't know whether my client's going to be testifying at trial at this point. So is he going into kind of this constitutional objection that he's making on appeal? No, because he never suggested that the district court's ruling or his own production of the document would affect or would alter his willingness to testify. So in our view, the defendant simply never put the district court on notice. The district court wasn't aware that there was any constitutional bearing of the defendant's objection, and the district court did consider all the factors before it, which included the defendant's production, because the defendant never suggested to the court that that was simply off the table. Now, on the substance, I understand the defendant in his reply briefing here this morning, although perhaps there's some confusion, but I think he's disavowing a straight-up constitutional challenge. He's only relying on the text of the rule itself, and that, I think, is problematic because his argument is not actually grounded in the text of any of the rules. Rule 901 speaks broadly to whether the evidence is sufficient to support a finding that the exhibit is what it's claimed to be. He argued in his reply brief, relying on Dumecy, that Rule 901 requires consideration of the circumstances of discovery. Do you want to respond to that since that was argued in the reply? Yeah, so what that case stands for is a proposition that district courts are required to consider all of the circumstances that are presented to them, including circumstances surrounding the discovery of the document when that's presented to them. So that's a textual argument in favor of the government, that the rule requires consideration of all those factors, that it doesn't place anything off limits. That's consistent with Rule 901b-4 as well, which speaks broadly to the document's contents and patterns in combination with all of the circumstances. The defendant is asking to read that to mean something other than all of the circumstances and to add a very, I think, unnatural and kind of gerrymandered carve-out to that rule. On top of that, in terms of the textual argument, it's worth noting that there are other rules that prohibit the government from using defendant's disclosures. Under Rule 12.1, 12.2, and 12.3, when the defendant has made a disclosure of an alibi defense or an insanity defense or public disclosure or public authority defense, the rules state that the government may not use that if the defendant does not pursue those defenses at trial. Rule 16 says nothing similar concerning a defendant's reciprocal discovery, and Rule 901 simply says nothing at all about that. As the defendant's own case is recognized, it encompasses all of the circumstances that are presented to the court and that bear on and are relevant to authenticity, which include the production as the district court recognized. The power of the government had been forced to authenticate these WhatsApp chats without being allowed to say that they had come from Mr. Espinola. How do you think it would have done that? We would have relied on Rule 901B4, and in terms of the document's internal contents and substance in combination with all of the circumstances. Here that includes that the exhibit repeatedly disclosed that the defendant's identifying information. It discloses documents uniquely within his control and information uniquely within his knowledge. In terms of his identity, it discloses he provided his full name. He also repeatedly or he also provided the same email address that he used to register his company and his bank accounts. He also provided the mailing address in which officers actually interviewed him in person. On multiple occasions, he produced documents. He sent screenshots or pictures of documents uniquely within his control. Those included screenshots of each of the Moline deposits into his Washington Federal account. A witness from Washington Federal confirmed that those screenshots were consistent with how those transactions would appear to a user in its online banking platform and also that those transactions were in fact the very same transactions that were depicted in this defendant's bank accounts. The defendant also sent pictures of deposit slips for checks that he personally signed and deposited from one account that he controlled to another account that he controlled and his bank account records confirm those same deposits. He likewise sent receipts of wire transfers from his Citibank account including into his Bitcoin broker account and the records from both of those accounts confirm those transfers. He also provided information uniquely in his knowledge including real-time updates on his own activities. In one instance, he talked about going in person to a Citibank branch in order to apply for an account. He said the next day he was waiting for approval and the day after that that he had received approval. Citibank records confirm that in fact the defendant himself personally went into a Citibank branch on that first day and that the account actually was approved on the third day just as the defendant had described in real-time in the conversation. There are other instances of that as well including when he provided status updates on his purchase of Bitcoin on the wire transfers and when deposits became available all of which were confirmed by the defendant's bank records. The defendant offers a hypothetical suggesting that if a document simply came to law enforcement came in the mail without any indication of who sent it he suggests that that could not be authenticated and I think that's just not true. There are many ways in which such a document could be authenticated. Under 901B2 for example allows authentication by testimony by someone who recognizes handwriting. So if the FBI receives a letter without any return address without any testimony of who sent it if someone testifies that yes that's the defendant's handwriting that exhibit is admissible and here this court has applied the same principles under B4 based on the document's contents and circumstances and fluker where an email arrives from an unknown sender that the court found authenticated because the address for indicia of a certain individual's identity and the emails themselves disclose information that that individual would be in a position to know all of that is true here as well. Unless your honors have any further questions we'd ask this court to affirm. Okay, thank you Mr. Kinstra. Mr. Drysdale, we'll give you a minute. Can you confirm please before you start you are not raising a constitutional challenge, correct? You are only raising a statutory interpretation challenge. That's correct, your honor. The interpretation of the statute creates the constitutional reading in the way that the district court raised it but it is a statutory interpretation question. But what I really want to raise on rebuttal is in response to Judge Roldner's question to the government about what would you have done if you couldn't use the circumstances here and the response I just heard should be the most troubling aspect of this case because not a single time has the government mentioned Rule 901B1 which would have allowed them to take the witness that they identified extensively as the co-conspirator in this case and put him on the witness stand and subject him to cross-examination. They can take our Rule 16 disclosures, they can use it to investigate a case, call witnesses and subpoena them, put them on the witness stand and let us cross-examine them. Instead, they just stood in front of the court and in front of the jury ultimately and said these are authentic because Mr. Espinola gave them to us. That's what we would like to avoid. Put him on the witness stand and let us cross-examine him. Thank you, your honors. Thanks to both counsel. In the case, the case will be taken under advisement.